# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| LARISSA PELUSO, | ) |
|               Plaintiff, | ) ) ) |
| v. | ) Docket No. 2:22-cv-00299-NT |
| ABBOTT LABORATORIES, | ) ) ) |
|               Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before me is a motion for summary judgment from Defendant Abbott Laboratories (ECF No. 40). For the reasons stated below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## FACTUAL BACKGROUND

Plaintiff Larissa Peluso began working for Defendant Abbott Laboratories ("**Abbott**") in October of 2020. Abbott's Resp. to Pl.'s Statement of Material Facts ("**SOF**") ¶ 4(a) (ECF No. 52). Abbott is a global healthcare company that, among other things, manufactures diagnostic testing. SOF ¶ 4. Peluso worked in the Purchasing Department as a Procurement Specialist at Abbott's manufacturing facility in Scarborough, Maine. SOF ¶¶ 4(a), 33. This facility produces COVID-19 testing kits. SOF ¶ 4(a). Her manager Thomas Dobrovolny supervised eight employees, including Peluso, in the Purchasing Department. SOF ¶ 33.

In May of 2021, leadership at Abbott's Scarborough facility learned that they would need to reduce their headcount due to decreased demand for COVID-19 testing

kits. SOF ¶ 5. To that end, on June 4, 2021, managers in each department were asked to complete a "talent assessment" form that involved ranking each employee they supervised on a scale of 1 to 3. SOF ¶ 6. Dobrovolny completed the form that same day. SOF ¶ 7. Dobrovolny ranked Peluso and her colleagues Matt Enman and Rick Martin lowest, with scores of 1.75, 1.5, and 1.75, respectively. SOF ¶¶ 7–10. They were each identified as "Impacted" in the form's "Decision" column, while the other five employees in the Purchasing Department were identified as "Retained." Stip. R. Doc. 29, at 3 (ECF No. 39-29). Abbott chose July 7, 2021 as the date it would notify employees selected for layoff and terminate their employment. SOF ¶ 12.

On July 6, 2021, the day before she was to be notified of her layoff, Peluso told Dobrovolny for the first time that she was pregnant. SOF ¶ 13. She asked Dobrovolny to work remotely because she was having difficulty with smells in the facility. SOF ¶ 13. At the time, she was ten or eleven weeks pregnant. SOF ¶ 46. Dobrovolny notified Human Resources Representative Brooke Cross of Peluso's pregnancy and request to work remotely. SOF ¶ 49. Cross, in turn, notified her supervisor. SOF ¶ 50. After receiving confirmation from Cross that he should do so, Dobrovolny proceeded with the layoff process and notified Peluso on July 7, 2021 that Abbott was terminating her employment. SOF ¶ 14; Stip. R. Doc. 21, at 28:5–28:17 (ECF No. 39-21).

Abbott offered Peluso and other laid-off employees Pay Continuation Leave Agreements ("**PCL Agreements**"). SOF ¶ 15. In broad strokes, all laid-off employees would receive some severance benefits from Abbott, but those who signed PCL

Agreements would receive additional benefits, such as four months of pay continuation, rather than two. Stip. R. Doc. 10, at 1–2 (ECF No. 39-10). But in order to receive these additional benefits, Abbott required that the laid-off employees release and waive any claims they may have against Abbott through the date they signed their agreements. Stip. R. Doc. 10, at 3–4. Peluso signed and returned her PCL Agreement on July 7, 2021.[1] SOF ¶ 15.

A few weeks after the July 2021 layoffs, Abbott experienced an increase in demand for COVID-19 test kits due to the outbreak of the Omicron variant of the virus. SOF ¶ 28. Abbott had to ramp up production at the Scarborough facility and needed more support in the Purchasing Department. SOF ¶ 28. Dobrovolny contacted Human Resources because his department was short-handed and needed help. SOF ¶ 55. Specifically, he spoke to Cross and said he needed to hire a Procurement Specialist. Stip. R. Doc. 21, at 30:2–30:9, 31:5–31:10. Dobrovolny told Cross to contact Enman about returning to work. Stip. R. Doc. 46, at 25:8–25:11 (ECF No. 39-46). The Purchasing Department was not the only one that needed help. In her deposition, Cross estimated that she contacted about 30 laid-off employees about returning to work on temporary assignments on the operations side of the business. Stip. R. Doc. 46, at 23:22–23:25, 24:15–24:24.

---

[1] The parties dispute whether Peluso, through counsel, revoked the PCL Agreement and thereby her release of claims against Abbott that accrued by July 7, 2021. *See* Abbott's Resp. to Pl.'s Statement of Material Facts ("**SOF**") ¶¶ 16–23, 26, 84, 87 (ECF No. 52). But that dispute is immaterial because Peluso is no longer pursuing the termination-based claim. *See infra* n.2.

3

Cross spoke to Enman about coming back to Abbott and he declined. Stip. R. Doc. 46, at 29:3–29:7. After this conversation, Enman sent Peluso a text message asking if she had also been asked to return to work. Stip. R. Doc. 4, at 7:7–7:23, 41:17–41:25 (ECF No. 39-4). She had not; Abbott did not contact Peluso or Martin about coming back. SOF ¶¶ 65–66, 68; Stip. R. Doc. 21, at 32:4–32:10; Stip. R. Doc. 46, at 25:4–25:5, 26:2–26:3.

After Enman declined the offer to return as a Procurement Specialist, Abbott posted the position externally. SOF ¶ 31. Peluso saw the job post but did not apply. SOF ¶ 32; *see* Stip. R. Doc. 12 (ECF No. 39-12). Abbott interviewed two candidates in mid-August of 2021 and selected Dan Coombs for the position. SOF ¶¶ 74–76. Coombs was not one of the employees who was laid off from the Purchasing Department in July of 2021. Stip. R. Doc. 29, at 3.

In June of 2022, Peluso filed suit against Abbott in Cumberland County Superior Court. SOF ¶ 1. Abbott removed the case to this Court citing diversity jurisdiction. SOF ¶ 2; Notice of Removal (ECF No. 1). Peluso's Complaint alleges one count of pregnancy discrimination in violation of the Maine Human Rights Act ("**MHRA**"). SOF ¶ 1; Pl.'s Compl. for Discrimination ("**Compl.**") ¶¶ 27–31 (ECF No. 39-19). Initially, Peluso appeared to be proceeding under a theory of discriminatory termination, but Peluso is no longer pursuing a termination-based pregnancy discrimination claim. SOF ¶ 3. Peluso alleges in her Complaint that after she was laid off, "Abbott did not contact or recall Peluso for the subject position." Compl. ¶ 24. Peluso maintains that based on this allegation, her Complaint also asserts a claim

4

for pregnancy discrimination in violation of the MHRA based on Abbott's failure to recall or rehire her. SOF ¶ 1. Her sole claim is that Abbott's refusal to recall or rehire her violated the MHRA. SOF ¶ 3.[2] Abbott has now moved for summary judgment on that claim. Def.'s Mot. for Summ J. ("**Def.'s Mot.**") (ECF No. 40).

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence 'is such that a reasonable jury could resolve the point in the favor of the non-moving party . . . .' " *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 93 (1st Cir. 2021) (quoting *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 7 (1st Cir. 2018)). "[A]nd a fact is 'material' if it 'has the potential of affecting the outcome of the case[.]' " *Id.* (quoting *Pérez-Cordero v. Wal-Mart P.R., Inc.*, 656 F.3d 19, 25 (1st Cir. 2011)).

"The party moving for summary judgment bears the initial burden of showing that no genuine issue of material fact exists." *Feliciano-Muñoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020). Once it does, "the burden shifts to the nonmoving party . . . to demonstrate that a trier of fact reasonably could find in [her] favor" on each issue that bears on the burden of proof. *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)). "Judgment should be entered 'if there can be but one reasonable

---

[2] Peluso's response to this statement of fact is a mix of denials and admissions. She does admit that the "Defendant consented to amendment of Paragraph 30 [of the Complaint] to make clear that her claim is that the refusal to recall/rehire is the sole basis for her MHRA claim." SOF ¶ 3.

5

conclusion' come trial, but 'if reasonable minds could differ,' judgment should not be entered for the moving party." *Me. Med. Ctr., Inc. v. Gen. Reinsurance Corp.*, 636 F. Supp. 3d 212, 216 (D. Me. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Moreover, I must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in her favor. *EdgePoint Cap. Holdings, LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50, 57 (1st Cir. 2021). However, I am "not obliged either 'to draw unreasonable inferences or credit bald assertions or empty conclusions.' " *Theriault v. Genesis HealthCare LLC*, 890 F.3d 342, 348 (1st Cir. 2018) (quoting *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007)).

## DISCUSSION

Abbott argues that it is entitled to summary judgment because Peluso cannot meet the prima facie case requirements for a failure to recall or rehire claim. Def.'s Mot. 3–5. Peluso takes the opposite view on the failure to recall part of her claim. Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("**Pl.'s Opp'n**") 1–2, 6–9 (ECF No. 46). Moreover, Abbott maintains that even if Peluso clears the prima facie case hurdle, she has not shown that Abbott's proffered non-discriminatory reasons for not recalling or rehiring her are pretext for pregnancy discrimination. Def.'s Mot. 5–7. Peluso disagrees. Pl.'s Opp'n 9–13.

Peluso's failure to recall or rehire theories of liability arise under the MHRA, which makes it unlawful to "discriminate with respect to hire, tenure, promotion, transfer, compensation, terms, conditions or privileges of employment or any other

6

matter directly or indirectly related to employment" because of sex. 5 M.R.S.A. § 4572(1)(A). "For purposes of [the MHRA], the word 'sex' includes pregnancy and medical conditions that result from pregnancy." 5 M.R.S.A. § 4572-A(1). In its motion, Abbott addresses the failure to rehire and failure to recall theories of liability separately, as distinct claims. Def.'s Mot. 3–5. I follow suit.

## I. Failure to Rehire

I begin with Peluso's failure to rehire claim. Peluso did not respond to Abbott's arguments on this theory of liability. For that reason alone, the theory can be dismissed. *See Montany v. Univ. of New Eng.*, 858 F.3d 34, 41 (1st Cir. 2017) (plaintiff's failure to "put forth any argument in her opposition to defendants' motion for summary judgment" with respect to a particular claim "constitutes abandonment" of that claim).

However, even if I address the merits, Abbott has demonstrated that Peluso cannot establish an essential element of a failure to rehire claim. To establish a failure to rehire prima facie case, Peluso must show that (1) she belongs to a protected group; (2) she applied and was qualified for a job for which Abbott was seeking applications; (3) Abbott rejected her for the position despite her qualifications; and (4) after her rejection, the position remained open and Abbott continued to seek applications. *See Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 584 (1st Cir. 1999), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

Peluso admits that she knew that Abbott had posted the Procurement Specialist position and that she did not apply for it. SOF ¶ 32. Because on the record presented, no reasonable jury could find that Peluso applied for the job, she cannot

7

establish the second element of a failure to rehire theory. Accordingly, this part of Peluso's MHRA claim fails on the merits.

## II. Failure to Recall

I next turn to Peluso's failure to recall theory of liability. The parties have not found a Maine or First Circuit case that addresses the elements of this claim, but it is clear that a failure to recall after layoff can constitute an adverse employment action. *See Rodríguez-García v. Miranda-Marín*, 610 F.3d 756, 766 (1st Cir. 2010). Abbott cites a New York case that states that the elements of a recall claim are that: "(1) [the laid-off employee] is part of a protected category; (2) she was qualified to perform the job in question; (3) when she was working, she satisfied the normal requirements of the job; (4) following the lay-off, a recall was conducted and, although eligible, she was not recalled; and (5) the individual who was recalled instead of her was a former employee outside of Peluso's protected category." Def.'s Mot. 3–4 (citing *Doroz v. DeIorio's Foods, Inc.*, 437 F. Supp. 3d 140, 156 (N.D.N.Y. 2020)).[3]

Abbott argues that Peluso cannot make out a prima facie case because: (1) she was not eligible for recall; (2) Abbott did not conduct a recall of Procurement Specialists; and (3) Abbott did not recall any Procurement Specialists, choosing instead to post the position externally. Def.'s Mot. 4.

---

[3]   Peluso cites an age discrimination case and asserts that the elements of the prima facie case are that: "1) plaintiff was within the protected age bracket at the time a job became available; 2) plaintiff was qualified for the job; 3) plaintiff was not recalled; and 4) the employer took age into account in deciding whether or not, or when, to recall the plaintiff." Pl.'s Opp'n 7 (citing *Franci v. Avco Corp.*, 538 F. Supp. 250, 261 (D. Conn. 1982)).

8

As to Peluso's eligibility for recall, Abbott contends that Peluso, by signing the PCL Agreement and acknowledging Abbott's Employee Handbook, had no right to be recalled.[4] Def.'s Mot. 4. I agree that under the PCL Agreement and the handbook provisions, Abbott was not required to conduct a recall[5] and Peluso had no right to expect to be recalled. But a company that is not required to recall employees but does so anyway should not be able to use membership in a protected category as a basis for a decision not to recall someone. In other words, whatever the written policy or agreement may have been, the record contains evidence that Abbott tried to recall laid-off employees, at least one of whom was subject to the same PCL Agreement and policies as Peluso. Stip. R. Doc. 46, at 23:22–25:3; Stip. R. Doc. 3, at ¶¶ 8–9 (ECF No. 39-3). A reasonable jury could thus find that Peluso, like Enman, was eligible for recall.

As to whether Abbott conducted a recall, Abbott claims that it did not conduct a recall of Procurement Specialists. But Cross estimated that she contacted about 30

---

[4] A provision in the PCL Agreement states that "Abbott is under no obligation to rehire you." Stip. R. Doc. 10, at 3 (ECF No. 39-10). The Employee Handbook states:

> The Company does not have a recall policy. Employees who are separated from positions due to a reduction-in-force will be eligible for reconsideration for future employment in the position for which they qualify. Employees must, however, reapply through the normal application procedures and will be considered along with all other applicants.

SOF ¶ 27; Stip. R. Doc. 6, at 14 (ECF No. 39-6). Abbott has not pointed to any record evidence about whether laid-off employees who were contacted to return to work in 2021 were required to reapply through the normal application procedures.

[5] Abbott has not argued or provided authority that the term "recall" has special legal significance. Construing the record evidence in the light most favorable to the Plaintiff, I conclude that a reasonable jury could find that Abbott did in fact conduct a "recall" by attempting to recall laid-off employees.

laid-off employees about returning to the operations side of the business. Stip. R. Doc. 46, at 24:15–24:24. And Abbott admits that Cross contacted Enman, a former employee in the Purchasing Department, "to gauge interest in a temporary assignment."[6] SOF ¶ 57. Viewed in the light most favorable to Peluso, a reasonable jury could find that Abbott conducted a recall and that the recall involved the Purchasing Department.

Finally, Abbott argues that Peluso's recall claim fails because Abbott did not end up hiring back any of its laid-off Procurement Specialists to fill the opening. According to Abbott, this relates to the fifth element of the prima facie case: "the individual who was recalled instead of her [must be] a former employee outside of Peluso's protected category." Def.'s Mot. 4 (citing *Doroz*, 437 F. Supp. 3d at 156). But this element does not make sense in the context of this case. *See generally Weston-Smith v. Cooley Dickinson Hosp., Inc.*, 282 F.3d 60, 64 (1st Cir. 2022) (explaining that

---

[6] The parties dispute whether Cross talked to Enman about returning to Abbott for a discrete, temporary assignment or to a regular, full-time Procurement Specialist position. *See* SOF ¶¶ 29–31, 57. Moreover they dispute whether Cross called to simply gauge Enman's interest in coming back, or whether she made a job offer over the phone. *See* SOF ¶¶ 29, 57. Viewed in the light most favorable to Peluso, a reasonable jury could find that Cross offered Enman a regular, full-time Procurement Specialist position. To be sure, the record contains evidence to the contrary—for example, Dobrovolny submitted a declaration after his deposition explaining that he authorized Cross "to contact Mr. Enman to gauge his interest in returning for a temporary, short-term assignment." Stip. R. Doc. 3, at ¶ 8 (ECF No. 39-3). But it is undisputed that just days after this discussion with Enman, Abbott posted a job advertisement for a full-time Procurement Specialist position, not a temporary assignment. *See* Stip. R. Doc. 32 (ECF No. 39-32). Viewing the evidence in the light most favorable to Peluso, a reasonable jury could conclude based on the actual job posting and its timing that Enman was offered the full-time position.

The parties also dispute whether Enman had the same job as Peluso. Abbott points to evidence that his title was Junior Procurement Specialist, while Peluso's was Procurement Specialist. SOF ¶ 62; Stip. R. Doc. 21, at 32:22–32:24 (ECF No. 39-21). Peluso points to Dobrovolny's testimony that "they both did the same thing." SOF ¶ 62; Stip R. Doc. 21, at 32:25–33:1. Viewed in the light most favorable to Peluso, a jury could find that she and Enman had the same job.

the requirements of a prima facie case are flexible and may vary based on context). If a company conducts a recall but refuses to recall an otherwise eligible laid-off employee because she is pregnant and instead hires from outside, that conduct would still violate the MHRA. *See* 5 M.R.S.A. § 4572(1)(A) (unlawful employment discrimination includes to "discriminate with respect to hire, tenure, promotion, transfer, compensation, terms, conditions or privileges of employment or any other matter directly or indirectly related to employment"[7] because of sex); 5 M.R.S.A. § 4572-A(2) ("It is unlawful employment discrimination in violation of this Act, except where based on a bona fide occupational qualification, for an employer . . . to treat a pregnant person who is able to work in a different manner from other persons who are able to work."). Taken in the light most favorable to Peluso, a reasonable juror could conclude (1) that Abbott offered to recall Enman, a non-pregnant Procurement Specialist from the Purchasing Department, who scored slightly lower than Peluso in the talent assessment; and (2) that when Enman declined, Abbott abandoned its recall effort in that department, rather than offer to recall Peluso.

Abbott next contends that even if Peluso could establish a prima facie case of pregnancy discrimination, she has not done enough to show that Abbott's proffered

---

[7]   The phrase "or any other matter directly or indirectly related to employment" appears in the MHRA, but not Title VII. *See* 42 U.S.C. § 2000e-2. The Maine Supreme Judicial Court has, for example, cited this expansive language in finding that an oral reprimand constituted an adverse employment action under the MHRA. *See King v. Bangor Fed. Credit Union*, 611 A.2d 80, 82 (Me. 1992). Maine courts do, of course, look to Title VII case law when interpreting the MHRA, but only where the two laws are "substantially identical." *Scamman v. Shaw's Supermarkets, Inc.*, 2017 ME 41, ¶ 26, 157 A.3d 223 (internal quotations and citation omitted). Where they diverge, "deference to [the] construction of the federal version is unwarranted." *Me. Hum. Rts. Comm'n v. Kennebec Water Power Co.*, 468 A.2d 307, 310 (Me. 1983). As this broad "directly or indirectly related to employment" language directs, the MHRA covers conduct that Title VII may not.

11

reason for not recalling her was pretext for pregnancy discrimination. Def.'s Mot. 5. Abbott maintains that it did not recall Peluso because it was not obligated to do so under the PCL Agreement or its internal policies. Def.'s Mot. 5. But those same policies and that same agreement applied to Enman, and a reasonable juror could find that Abbott tried to recall him. Moreover, Enman scored lower than Peluso on the talent assessment, yet he was offered the recall and Peluso was not. At his deposition, Dobrovolny testified that there was no reason why he chose Enman, rather than Peluso or Martin, for recall, and that Enman's name just came up first.[8] Stip. R. Doc. 39-21, at 32:6–32:10. A reasonable jury could find this "no reason" explanation pretext for pregnancy discrimination.[9] Because none of Abbott's arguments succeed, its motion for summary judgment on the failure to recall component of Peluso's MHRA claim is denied.

## CONCLUSION

For the reasons stated above, Abbott Laboratories' Motion for Summary Judgment (ECF No. 40) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the motion is **GRANTED** with respect to the failure to rehire part of Peluso's claim and **DENIED** with respect to the failure to recall part of Peluso's claim.

---

[8] Dobrovolny submitted a declaration with an explanation of why he declined to contact Peluso or Martin when Enman did not want to come back to work at Abbott. Stip. R. Doc. 3, at ¶ 9. But this explanation does not address why Enman, and not Peluso, was his first call.

[9] On the other hand, a reasonable jury could find discriminatory animus lacking where Peluso was treated the same as Martin, a non-pregnant, same-scoring laid-off employee. *See* Def. Mot. 6 (ECF No. 40). But this is precisely the type of disputed material fact that juries are meant to decide.

12

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 17th day of July, 2024.

13